Case No. 21-5108, Watkins Law & Advocacy, PLLC, Appellant v. United States Department of Justice, et al. Mr. Watkins for the appellant, Mr. Sonny for the appellate. Good morning, counsel. Mr. Watkins, please proceed when you're ready. Good morning. May it please the court. This appeal is about three Freedom of Information Act requests, all with the same subject matter, involving the reporting of names of veterans who the Department of Veterans Affairs has deemed to be financially incompetent. To the Federal Bureau of Investigation under the Brady Act, the Department of Justice has essentially withheld all documents related to this subject matter. There are broad categories of documents that were requested from the Department of Justice, which is charged with handling the Brady Act. Yet, seven years after the Freedom of Information Act requests were filed, two documents have been disclosed that are the annual reports provided to Congress. The scope of the FOIA requests clearly encompasses all of the annual reports that were provided to Congress to explain how names have been reported by the various agencies of the federal government under the Brady Act. That is just a piece of the scope of the FOIA requests to the Department of Justice. The FOIA request to the FBI is quite similar in scope to DOJ. And then the third FOIA request is to the Department of Veterans Affairs. The Department of Veterans Affairs, unlike the other two agencies, has identified many documents but withheld them all under deliver of process privilege, making allegations that communications between agencies, without identifying whether the communications were between attorneys at agencies, are still covered by attorney-client privilege. So the Department of Veterans Affairs is not at issue with respect to scope of search, but is at issue with respect to the applicability of deliver of process privilege. The problem here with, we'll start with the Department of Justice, is that in its response determination in its initial letter, before it provided any information about documents, said, Well, we, they said, sorry, we have unusual circumstances. And the unusual circumstances apparently from the Department of Justice's perspective were that they needed to search for the documents elsewhere. There are only three circumstances under the statute when unusual circumstances apply. And they are the need to search for and collect from an office separate from the office processing the request, the need to search for a voluminous amount, and the need to consult with two or more components outside the agency. There's essentially an admission in the response letter from the Department of Justice that they needed to search beyond the office of the Attorney General if they were going to pull the documents that were responsive to the request. There was no such search performed, it appears. All the evidence suggests that from documents that were not produced by the DOJ, there are many more documents that should have been uncovered. Can I ask a question about that? So, as I understood the back and forth in the district court, the government made apparent in some of its submissions that it understood the requests to DOJ to be one directed at the office of the Attorney General. Yes. And I didn't see where that characterization of the scope of that request was contested. And I know that you have some questions about why not look at some of the other components, why not look at Office of Legislative Affairs. But as I understood the back and forth in the district court, it was framed as a request to OAG qua OAG, as opposed to the Attorney General as the supervisor of the entire Department of Justice. And I didn't see where that framing of it was disputed by you, but maybe I'm wrong about that. So the framing of the request must encompass the following. The request was made surely to the attention of the Office of the Attorney General. Right. For example, these annual reports that the Department of Justice is supposed to file with Congress about how many veterans have been reported under the Brady Act so that they lose their Second Amendment rights. There is no way for anybody to know who with the Department of Justice prepares them. An insider to the Department of Justice might know this, but any member of the public would not. Before this lawsuit, not a single one of those annual reports had been disclosed publicly. After this lawsuit, we have one with a date on it, one without a date on it. The request specifically says, if any records, I'm sorry, if DOJ's OAG does not have custody or control over certain requested and responsive records, but knows or believes that another component of DOJ subject to FOIA does, please forward this FOIA request to the appropriate person and inform us that you have done so. That seems to fit neatly within unusual circumstances as defined by the statute. There was a perfect understanding at DOJ that OAG may not have had the documents. I'm not sure whether they do or they don't. What I can tell you is that although the OAG is charged with informing Congress about reporting under the Brady Act, there is no evidence to show that they have. I don't know who at DOJ does it, and I've had to wait seven years to try to find out. I don't know what a FOIA applicant is supposed to do with DOJ. Did you consider just filing a FOIA request with the Office of Legislative Affairs after this came up? So this places the burden on the FOIA applicant to essentially pepper DOJ, every division at DOJ, with a FOIA request if you don't know where the documents are. Well, you targeted one specifically to the Office of Attorney General, and you have reason to believe it's in a different office now. So I don't know that it has the consequences you're describing. I'm just asking, once you were aware that it could be the Office of Legislative Affairs, which you had not directed a FOIA request, couldn't you have submitted one to them? Seven years ago, I didn't know where any documents were in the Department of Justice, let alone the FBI or the VA. I didn't know the scope of what I would be given. All I knew was that I had several veterans who I was trying to represent. I know. I'm just talking about in the interim to try to speed things along here, because I understand your interest in efficiency here. So that's why I'm wondering if… Is it possible that I could have filed a request directly with the Office of Legislative Affairs? And then once you found, once you discovered, I'm not taking issue with the proposition that you wouldn't have known that at the outset, but in the course of the back and forth in the seven years that's transpired, it became apparent that OLA might have some documents at that point, or even now, a FOIA request could be submitted that targets Office of Legislative Affairs. I agree it's possible to still submit. I'm going to reserve the rest of it. Can I ask, let's save you some time. I just have one more question. And this is just a fact question. It's not to get into legal consequences at all, but are these reports, normally reports between the Justice Department that are required to submit to Congress are a matter of public record. Are these reports nowhere publicly available that you're aware of from Congress or from… I'm aware of any place that you can get these reports. I'm not aware of any instance of them on the Internet. The only instance is the recognition that in this lawsuit, one undated report and one dated report were revealed. That's part of the problem. 80% of the veterans who are proposed to be financially incompetent through the VA's process are deemed financially incompetent. That means that 80% of them probably had no lawyer who could help them, or they had dementia and they belonged in the category of being financially incompetent. But I can tell you from the perspective of somebody who represents veterans, it's very, very hard to defend them because the process is secret. And then it takes a half a decade before you can ever get to an appeal to try to reverse the financial incompetency. So the importance of these records could not be greater for these several hundred thousand veterans who in a reasonable period of years were reported under the great law. Thank you. We'll give you some time. We'll give you some time for rebuttal. Thank you. Just a few minutes. I appreciate it. Mr. Simon, we'll hear from the government now. Thank you. Good morning. Shortly before this lawsuit was filed five years ago. Can you just make sure you stay kind of within the zone of the microphone instead of deviating to the side so it gets a little bit harder to hear? Shortly before this lawsuit was filed five years ago, OAG, I'm sorry, the OIP, on behalf of the Office of Attorney General, responded to Mr. Watkins advising that the Office of Attorney General's record system was searched in response to his request. Mr. Watkins filed a complaint thereafter in which he confirmed in paragraph 30, this is Joint Appendix 19, that the material he sought with respect to his FBI and OAG request concerned interagency agreements and the procedures by which information on veterans was reported to the FBI. In an initial round of summary judgment motion filed four years ago, the FBI stated that it understood the request to seek documents regarding the process by which the VA provided information. OIG, I mean, OIP on behalf of OIG made a similar statement. That's JA-211-212. In Mr. Watkins' response to opposition and cross-motion at JA-371, he had a very limited argument as to the adequacy of the search by OIP and FBI, limited to search terms used, and the omission of a document, the 1998 Memorandum of Understanding that had not been produced or located by the FBI, did not take issue at all with the understanding of the scope of the request or the OIP's determination that the request sought the records of the Office of Attorney General as the component to which the request was directed. Does it ever happen that DOJ, so OIP is the intake valve. If OIP just learns that even though the search was targeted at OIG and that was said in the back and forth and that wasn't disputed, if OIP just learns, actually, that was just a mistake because I'm just hypothesizing, because really the bulk of the documents are in the Office of Legislative Affairs. Is it ever the case that OIP would just then ask OLA to run a search and to come up with the documents just because the government, who's in the best position to know where the documents might lie, discovers this and in good faith with a FOIA requester, just decides to do that? Well, I think, Your Honor, there's a decentralized system at the Department of Justice in their regulations for a reason. Thousands, tens of thousands of FOIA requests come in and there's an orderly process by which they are evaluated. At the intake stage, if the face of the request indicates that the requester sent it to the wrong place, if hypothetically this request actually said, I am looking for reports from DOJ to Congress regarding the NICS, then OIP would have referred the request to the Office of Legislative Affairs. Because OIP is the processing arm for that office, they would have then conducted the search of OLA records. But this request does not seek a request to Congress. And Ms. Watkins was aware in the 2007 NIC Improvement Amendment Act, it stated that reports will be made to Congress. So if that's what Ms. Watkins wanted or what Ms. Watkins wanted, they were on notice that such reports existed and they could have specified that in their request. Now, yes, the DOJ doesn't assume that a requester is going to understand necessarily that it's OLA that makes the reports to Congress. And so had Watkins not known that, that's fine. If he had specified in his request, it would have been routed there. Well, it's not just a known. The government's own FOIA reference guide lists the type of documents the Office of Attorney General has, as including specifically, quote, congressional testimony and accountability reports to Congress. It doesn't say the Office of Legislative Affairs would have in its description of its content. It doesn't fit the separate report. And so the government's own guidance to FOIA requesters said he was asking for a report from the Attorney General, putting aside the additional consideration that if it's a report from the Attorney General, even if OLA is doing the transmission, doesn't it make her believe to think that the Office of the Attorney General doesn't have a copy of a report it sent to Congress each year? Well, but to be clear, Your Honor, OIP did run a search. It's supplemental search using terms that Watkins had proposed, which was done during litigation, located sort of incidentally these reports to Congress. No, two of them, but that's great. I mean, that's sort of a problem, right? If the Office of Attorney General is making these reports, the FOIA guide says they're the office that will have them. And it took a supplementary report search just to find two of them. Doesn't it almost raise obsolete or say there's something wrong with your search process? You're not finding them? Your Honor, the OIP then, after they found those two reports, used the words from the title of the report and ran those words in the database, the OAG database, and still did not locate any additional reports. So the question here is whether that was a reasonable methodology to try to find any additional reports that might be in the economy. Have these reports been filed as required by law annually, or I think it later changed twice biannually? I'm not in a position to answer that question, other than to say that the search done by OIP of OAG records using a reasonable search methodology, that is, the titles or keywords from the titles of the two reports they did find in that database, did not locate any additional reports. Is there somebody in the office that's in charge of making these annual reports? Who in the government is in charge of making these and drafting them? It's not the Attorney General himself. There's got to be somebody who's in charge. Was that person asked, identified and asked? Again, the record establishes, what's reflected in the record, is that it was the Office of Legislative Affairs that sent these reports. Sent them, but that doesn't mean, again, I guess I would be shocked if the Office of Attorney General didn't have a copy of reports that it sent. They might have done the transmission. But these are from the Attorney General. I'd assume drafted by somebody on staff there, or put together, compiled by somebody on staff there. It's not the OLA's job to compile these reports. Your Honor, again, this is a FOIA case. The agency's obligation is to conduct a reasonable search. The request did not seek reports to Congress. Mr. Watkins took the issue. So we can debate whether the request, in fact, encompassed reports to Congress. Let's assume that it did. It didn't do it by name. But let's assume that the contents of at least the third request were broad enough to encompass it. And OIP conducted a search in the database that it determined was likely to have responsive records within the OAG. Again, because the request was directed to the OAG. It located two reports, and then following that lead, went and did a supplemental search of the database using keywords from the title of the two reports that it did locate. And we submit that that is a reasonable search methodology to try to locate whether any additional reports existed. And the law is well settled in this circuit that you do not evaluate the reasonableness of a search based on its results, but on the methodology. It's not uncommon in these searches to also find the subunit or the individuals responsible for handling certain matters, having them check their files as well, but that doesn't seem to have been done here. Somebody's got to be writing these reports if they're annually filed with Congress. Your Honor, this is an issue that was not, to the extent it was not developed low in the manner that the court's indicating, it's because Watkins raised this issue at the 11th hour in a final round of summary judgment briefing, where he re-characterized the request as seeking reports to Congress. And I will say, even then, never took issue with methodology used by OIP to search the OAG records. His argument instead seems to be that the request should have been read to seek reports to Congress, and that OLA should have been, the records of OLA should have been searched. And we would submit that Clement does not impose that obligation. But here you have... Question, David? No, you go ahead. I was going to change the subject. Go ahead. Are you done? Go ahead. I want to ask you about the Exemption 5 issue. So the government's obligation under FOIA is to, is to, this is a quote, to correlate exemption claims with the particular part of the withheld documents to which they apply. That's the standard here. And when I look at the Vaughn Index and the declaration, what I see is, you know, a broad assertion of attorney-client and deliberative process privilege without any, at least I didn't see any effort to correlate them to which document. Did I miss something in the record? Your Honor is correct that in every column, the agency claimed both deliberative process and attorney-client. But what I would emphasize on the Vaughn is that the Vaughn in its totality is detailed in terms of the type of issues that were being assessed in connection with the development of the Memorandum of Understanding. And I'd like to direct the Court to JA-670, which is an, it's a December 1997 internal memorandum of the FBI that was produced in this case. Reflecting censorship... Which document, which document number is this? JA-670. It's reflecting the completion of the MOU development process. It stated that the MOU, each MOU has been reviewed by the policy and legal points of contact at the appropriate agency and their comments incorporated into the respective MOU. So it's clear that the documents, the ones from the 1990 time period that Watkins has identified, were all in the context of developing the MOU, identifying sort of issues or trying to develop a common understanding between the FBI and the VA as to what obligations there were under the statute in terms of what needed to be reported for inclusion in the NIC, and also consistent though with other statutory obligations that... And you think that's enough for us to conclude it? Is that deliberative or attorney-client? Which is it? Well, the process was both pre-decisional and deliberative in that it led up to the 1998 MOU between the FBI and the VA, and as to specific entries... Not all actions that lead up to a final decision are deliberate. Right, Your Honor, but... I'm just asking how we know that that's deliberate. Well, we know that... You're not claiming it's attorney-client, right? I'm not claiming... The district court determined that not all of the attorney-client designations apply, and so we're seeking affirmance of that district court's decision, so we're not as certain. Let me ask you about a document or two then. Take a look at number 77. I'm sorry, I don't have the JASA. Number 77, it's a letter from the VA secretary to someone at ATF regarding comments to ATF on proposed regulations regarding definitions of persons prohibited from receiving firearms. Why is that? Sorry about that. Why is that attorney-client? This is document 77, Your Honor? Yeah, what's attorney-client about that? I don't... I'd have to check the district court decision. We're de novo here. I don't believe the district court found attorney-client to apply to that document. I was asking... I don't... It doesn't make any difference to me what the district court found. I'm asking you why that document is either deliberative or attorney-client. Your Honor, I believe the designation for attorney-client is related to some markings on the document indicating that it had undergone review by the OGC. Yeah, well, not everything that undergoes review by OGC is attorney-client. It still has to be about a legal question. And I would just submit, Your Honor, that if the court does not believe that satisfies the... that's sufficient information to satisfy attorney-client privilege, it does fall within this deliberative, pre-decisional time frame which the FBI and VA were closely coordinating to come up with a Memorandum of Understanding in order for the compliance of the procedure. Okay. Take a look at... Did you ask me about that document? A different document. Yeah, I was going to ask you about it. Take a look at 90. Again, I'm sorry, I don't have the JA. It's a memo from an undersecretary to the VA General Counsel. Okay? And, you know, no question, you know, a letter from the client to the counsel could clearly be attorney-client. But there's nothing in the Vaughn Index or the Knight Declaration that says the VA secretary was seeking legal advice in connection with that document. 309. Yes, I see that, Your Honor. Yeah. Again... Do you see my concern about this, of trying to apply the standard to this case? It's the government's burden to show that these documents are covered by an exemption, otherwise they have to be released. And I can't... I honestly don't see, with respect to these documents and quite a few others, where the government's met that burden. Well, Your Honor, again, the VA made it also the deliberative process privilege below, and we would submit that that... Okay, but how do I know... How do I know that's deliberative? See, the point is, without distinguishing between the two of them, obviously the attorney-client and deliberative process are two different functions, two different actions. And something could be deliberative without being attorney-client or attorney-client without being deliberative. And I just don't, to be honest, don't see enough in here to tell me which is which and why it would be, as we've said, quote, correlated to the particular document. Well, Your Honor, I would submit again that the totality of the law is reflecting a deliberative pre-decisional process leading up to the MOU. In fact, the request... Well, that doesn't work for everything. So how about, as far as I know, so how about Document 30? We can do this forever, but I just... The way you've done this as an umbrella is to say that we ought to view this in context and based on the JA670 that everything before a certain date is pre-decisional. I don't know about that, whether we ought to read that into every single thing, but Document 30, JA298, Table of Contents by Tab Number, October 11, 2005, RADIAC SVAC Meeting, Briefing Book, Table of Contents. Does that mean that 2005 is the relevant date for that one? Well, Your Honor, yes. There are other, obviously, later dates after the... But for this one, it's deliberative, Your Honor, because it is... What it is is a Table of Contents of what was identified by someone to include in a briefing book for someone to utilize at a meeting. And so there is, I think, we cited the Outlook Case Authority where this Court has recognized that separating information out is considered important for a particular discussion is a deliberative pre-decisional process. I mean, there's that... All we have is... There's nothing that would tell me that a briefing book Table of Contents is by definition a deliberative process, or is that your position? Is that your position? I think this says it's in the context of a meeting, for preparation of a meeting, and it identifies the meeting date. So I think... So any document that has to do with a meeting is a deliberative process in the government's view? No, but if you have a document that details out the specific documents that are included in a briefing book that is used to prepare somebody for a meeting, then I believe that satisfies the purpose of a meeting. So we have to know what the meeting's about? I don't know that in the context of... We need to know it's about making a decision. We can't assume just because something happened before a certain date that it was about that decision, about any particular decision. You have to identify the decision that this is supposedly informing. That could be a retrospective. That meeting could be discussing things that are already a matter of public record. Well, the subject matter of the meeting is identified, and it is a... And the subject matter is? It says the SVAC meeting. I don't know what those... You don't know what SVAC means? If you don't even know what it is, then it's a little bit hard to identify. I'm sorry. You go ahead. What the decision possibly could be. But it's not... I think the courts recognize it in the deliberative process. There doesn't need... Preparing somebody for a meeting. Any meeting. Well, a meeting... What's your best case for preparing somebody for a meeting? This is clearly related to the approved... The request here... The context of the request creates the parameters here. Watkins sought information in his request to the VA regarding the approved... Let's see what his language was. Decision-making procedures. He had a very broad request. Well, to the VA, approved decision-making procedures to determine whether a name will be reported. So that's the parameters of what these documents relate to. But if the decision had already been made, and now they're having a meeting discussing the decision that's already been made, that's not going to be pre-decisional. Right. The deliberation that went into identifying the records to brief somebody, to prepare somebody for the meeting, is a deliberate... Again, we don't know what this means. I reviewed to prepare for this oral argument. You could have an after-the-fact debrief. I mean, when I was in government, we did that sometimes. I think it's just a standard thing for organizations to do. That's a post-hoc debrief. That's a meeting that often happens, but it's not with an eye towards a subsequent decision. It's with an eye towards something that already happened. Again, I would just analogize to the process, for instance, which I prepared for this argument. Can I just ask you, with every one of these documents, the last column says deliberative slash attorney-client privilege. I take it the slash is and, not or. In other words, this was claiming both privileges for every document. That's correct. What's the possible attorney-client privilege specification for that one? Your Honor, it doesn't state in this entry what it was. The district court only upheld it on deliberate process. But the government claimed attorney-client privilege in the bond index in holding the document. That was a claim by the VA, yes. What could the basis for that be? Wouldn't there need to be some elaboration of how this could fit within the attorney-client privilege? These are all records from the Office of General Counsel. I can't imagine you're taking the position that every document that was within the purview of the Office of General Counsel is protected by the attorney-client privilege. That obviously can't be right. Well, I would say the other thing I would do, Your Honor, is I would refer the court to JA-283, which is the night declaration where the court, I'm sorry, where the declarant stated the basis for the attorney-client claims. Right. And as I read that, that was just a definition of the scope of the attorney-client privilege, which I think it was right. If you look at Black's Law Dictionary, I think it adequately says what the attorney-client privilege is, but it doesn't tie into the scope of the claim. The whole purpose of this is supposed to be so that the court can make an intelligent and informed assessment of whether the withholding based on a particular privilege is supportable. And with some of these, it just seems difficult to say that the record is sufficient for the court to make that kind of assessment. I think the court also needs to give some consideration that these are very old records, and so recreating exactly what the specifics were of the specific circumstance of the specific meeting over 10 years earlier is a challenge that FOIA doesn't really provide. Well, that's definitely true, but if it's a document that actually is responsive, then the burden is on the government to explain why it's not turning it over. So if there's difficulty with old documents, it seems to me that falls upon you as the government to explain, notwithstanding how old it is, why it is that it shouldn't be turned over. Otherwise, the document gets turned over. And I would just, again, reiterate that the alternative delivery process provides an alternative basis for the court to affirm. In fact, that's how the district court evaluated this particular document. Unless the court has other questions, we would not... Well, I did have one. There was... The Department of Veterans Affairs somehow discovered documents that had Bureau file numbers in them that the FBI itself did not discover until it found... The Department of Veterans Affairs hadn't went back and found those exact ones, but nothing in the Hardy Declaration tells us when the FBI, after the VA uncovered these things, went back and found them, where it looked to find things in the search and why it hadn't found them. Isn't that a pretty fatal flaw? Because they had documents, the VA found the documents, and the FBI quickly and easily found them once the VA gave them the document number. But we have no explanation as to why they weren't found in the first place by the FBI. What was wrong with the search that it missed them? Well, but again, to the extent the court finds there was a deficiency in the original search, the FBI cured that with a supplemental search by taking on its own initiative to utilize information from the VA production that allow it to more readily target what was in the archived files. What did it do to find these... Why didn't it find the files the first time? What did it do to find them this time in its supplemental search to the VA 587 of the Second Hardy Declaration? And by having file numbers, they were able to then locate the files. As I understand... Well, FOIA requesters can't provide file numbers, so there must have been something in those words that was missed by the word searches that should have been caught. And so did they re-run searches with new words rather than just look into the NICS? And the individual who... Did they just look for the file numbers that the VA had discovered, or did they do a broader search in their supplemental search? The supplemental search utilized the file numbers that were apparent. That's according to the Hardy Declaration. But there clearly had been something that the initial search missed. And so rather than do... Normally a supplemental search puts in additional terms. Here they just put in the two file numbers which made no effort to discover if there were other files that should have been uncovered. How is that sufficient? This particular search, Your Honor, was of the archived records. It was not done electronically. It was done with archived records by the individuals at the NICS with knowledge. It's the CJIS, as it was called. The division within the FBI that houses the NICS with knowledge of the records maintained by that agency. So that is the location they determined was reasonable to search for this. Again, Mr. Watkins... Here's what I'm missing. I understand that. All they did was go look for these two file numbers instead of doing a search that would have found related files. Because clearly the first search missed those documents. So it's old. You should have searched  But the archives were reviewed initially. Well then how are these missed? I don't know how they were missed, Your Honor. Don't we need to know that? Don't we need some explanation for what went wrong? Again, it's the methodology. They used file numbers that actually uncovered the very documents that Watkins said were missing on which he based his claim that the FBI search was deficient. So having found those records and I think approximately 50 or 60 pages of records, that actually validates the reasonableness of the FBI search. Under the Miracle case, they found additional documents actually locating the records that the requester said should have been found in this first search. I'll make sure my colleagues don't have additional questions for you, Mr. Simon. Thank you. Thank you, Mr. Simon. Mr. Watkins, I think you had two minutes left for rebuttal. Thank you, Your Honor. Two points. The FOIA request to DOJ was quite broad. All records, including all amendments, supplements, exhibits, and addenda thereto which set out or reflect the providing of information such as names of individuals by the VA to the DOJ slash FBI for inclusion in the National Instant Criminal Background Check System known as NISIS. It was a broad request. It wasn't meant to only encompass annual reports. It was meant to encompass much more. The request is similarly broad to FBI. FBI in its supplemental search found 59 pages of documents. Through 2015, 260,392 veterans' names were reported by the VA for inclusion in the database of individuals not entitled to have a handgun under the right hand because they were deemed financially incompetent. 260,000 individuals. In 2017 to 2018, 50,000 veterans were reported. How is it possible that they found 59 pages of records when the FOIA request encompassed all records which set out or reflect providing of information? It's just not plausible. It doesn't meet the ancient coin standard of being sufficient. There's so much material out here. It's overwhelming. What do you think is missing? We know the congressional reports. I think everything in Modern Times is missing. They found a single document in the past decade about the transfer of names between the VA and the FBI. You said you didn't want the ones presumably there's papers that say X name add this to the list X name add this to the list but you didn't you just claimed one of those individual ones. Presumably there's a large volume of those but those are not encompassed by your request. I understand but there is cooperation between the agencies. They're not on autopilot. They have to talk to each other over all of these years worth of time with tens of thousands of names being reported each year. It seems completely implausible that every document in the last 10 years lists particular names in it. That's not how they transfer information. They send the information electronically whether it's on a CD or the internet whatever they're doing today. The memorandum of understanding that we have obtained through this set of FOIA requests they explain that there are a lot of electronic transfers but the real point is that they have to coordinate with each other. The memorandum of understanding has changed over time. It seems only reasonable to conclude that there are far more documents between these agencies than have been admitted to exist. As a last point cut-off dates. We've waited seven years for documents in these cases. It simply is unfair to go back in time and to use a really early cut-off date. A FOIA requester is kind of stuck in the process. The agency says here's the date that you get and it's the date that we performed our search even if it was a bogus search. It's fundamentally unfair under the statute to expect a FOIA requester to get stuck with that early date when it didn't perform, when the agency didn't perform a FOIA search. Thank you for your time. Thank you, counsel. Thank you to both counsel. We'll take this case
judges: Srinivasan, Millett, Tatel